1
2
3
4                  **UNITED STATES DISTRICT COURT**

5                        **DISTRICT OF NEVADA**

6
7    RICHARD FALGE,                          )
                                             )
8                         Plaintiff,         )
                                             )          3:10-cv-00163-RCJ-VPC
9         vs.                                )
                                             )
10   DEBRA BROOKS et al.,                    )               **ORDER**
                                             )
11                        Defendants.        )
     _____     )

12            This case arises out of a correctional officer's alleged criticism of a superior and his

13   subsequent firing.  Pending before the Court is Defendants' Motion for Summary Judgment

14   (ECF No. 32).  For the reasons given herein, the Court grants the motion.

15   **I.      FACTS AND PROCEDURAL HISTORY**

16            Plaintiff Richard Falge was a Lieutenant Correctional Officer at Ely State Prison

17   ("ESP"), a maximum security facility of the Nevada Department of Corrections ("NDOC").

18   (*See* Am. Compl. ¶¶ 1, 5, 7, Sept. 26, 2010, ECF No. 22).  When Plaintiff criticized the

19   competence of ESP Associate Warden of Operations Debra Brooks to Defendants E.K.

20   McDaniel, Howard Skolnik, and others, he was terminated. (*See id.* ¶ 5).  Plaintiff believes

21   Defendants Brooks, McDaniel, Skolnik, Greg Cox, and Carla Crevling variously "participated

22   in, caused, authorized or ratified his dismissal . . . ." in retaliation for his constitutionally

23   protected criticism of Brooks. (*See id.* ¶ 10).  Defendants maintain that "Falge was terminated

24   because he falsified state documents and gave false and misleading statements about them in the

25   course of the [NDOC] investigation of the matter." (Mot. Summ. J. 1:27–2:1, Jan. 5, 2011, ECF

No. 32).

Plaintiff sued Defendants in this Court on a single count of First Amendment retaliation pursuant to 42 U.S.C. § 1983. By stipulation, Plaintiff amended the complaint to substitute Defendant Greg Cox in place of another defendant. The Amended Complaint ("AC") is otherwise identical to the original Complaint. Defendants have moved for summary judgment.

## II.   SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's

1    evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

2        If the moving party meets its initial burden, the burden then shifts to the opposing party

3    to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

4    *Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

5    party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

6    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

7    versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

8    626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

9    by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v.*

10   *List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions

11   and allegations of the pleadings and set forth specific facts by producing competent evidence that

12   shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

13       At the summary judgment stage, a court's function is not to weigh the evidence and

14   determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

15   U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

16   to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely

17   colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

18   **III.    ANALYSIS**

19       The Supreme Court recently ruled that internal grievances by public employees generally

20   do not implicate the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("We

21   hold that when public employees make statements pursuant to their official duties, the employees

22   are not speaking as citizens for First Amendment purposes, and the Constitution does not

23   insulate their communications from employer discipline.").  The Ninth Circuit recently decided a

24   case similar to the present case in favor of the employer. *See Desrochers v. City of San*

25   *Bernardino*, 572 F.3d 703 (9th Cir. 2009) (O'Scannlain, J.).  In that case, four sergeants of the

1    San Bernardino Police Department ("SBPD") filed an informal grievance about their Lieutenant.

2    *Id.* at 705.  When the Lieutenant found out about the grievance, he requested a transfer, which

3    was granted, and the aggrieved sergeants had little to no contact with the Lieutenant thereafter.

4    *Id.* at 706.  Two of the sergeants resolved their grievance, but Sergeants Desrochers and Lowes

5    went on to file a formal grievance against the Lieutenant, the Chief of Police, and the Captain

6    who had adjudicated the informal grievance. *Id.*  The formal grievance, which was supported by

7    declarations describing several incidents, essentially alleged that the Lieutenant was a bully who

8    had created a "hostile work environment" and that neither the Captain nor the Chief of Police

9    had taken appropriate steps to remedy the situation. *See id.* at 706–07.  The Captain denied the

10   formal grievance. *Id.* at 707.  Desrochers and Lowes then filed a complaint with the City's

11   Human Resources Department ("HR") against the Lieutenant, the Lieutenant's replacement, the

12   Captain, and the Chief of Police, and HR eventually denied the complaint. *Id.* at 708.

13   Desrochers was transferred from the Homicide Unit to the Robbery Unit, which he viewed as a

14   demotion, and Lowes had become the subject of an internal affairs investigation based on an

15   arrest he had made, resulting in a two-week suspension. *Id.* at 704.

16        Desrochers and Lowes filed a § 1983 action for First Amendment retaliation, as well as

17   several state law claims, but the district court granted summary judgment to the defendants

18   because the speech at issue did not address matters of public concern. *Id.* at 708.  The Ninth

19   Circuit noted that analysis of a First Amendment retaliation claim consists of:

20        a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter
          of public concern; (2) whether the plaintiff spoke as a private citizen or public
21        employee; (3) whether the plaintiff's protected speech was a substantial or
          motivating factor in the adverse employment action; (4) whether the state had an
22        adequate justification for treating the employee differently from other members of
          the general public; and (5) whether the state would have taken the adverse
23        employment action even absent the protected speech.

24   *Id.* at 708–09 (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)).  The district court

25   had ended its inquiry at the first step. *Id.* at 709.  The court noted that "the essential question is

whether the speech addressed matters of 'public' as opposed to 'personal' interest," which is a question of law upon which a plaintiff bears the burden. *Id.* (citations omitted). The line is between "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" on the one hand, *see id.* at 710 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)), and "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies'" on the other, *see id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley*, 705 F.2d at 1114)). The court specifically rejected the plaintiffs' attempt to characterize their concerns about their supervisors' competence and the morale of the police force generally as issues of public concern as opposed to internal power struggles. *See id.* at 710–11. The court used the following example:

> [W]hat if we judges prohibited our law clerks from taking coffee breaks? Suppose they responded with a memorandum complaining about the action. While they might assert—perhaps fairly—that caffeine deprivation would adversely affect their performance, morale, efficiency, and thus, their competency, no one would seriously contend that such speech addressed a matter of public concern.

*Id.* at 711. The Court made several further points. First, it is the content of the speech that matters, not a plaintiff's "post hoc characterizations" of the grievance. *Id.* Second, conclusory allegations of the "negative" effects of a supervisor's behavior are insufficient; a plaintiff must allege concrete negative results. *Id.* at 712–13. Third, the Court noted that Desrochers's claim that his speech was an issue of public concern was seriously undermined by the fact his grievance was purely internal. *Id.* at 714–15. The court summarized its holding by stating that "while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Id.* at 718 (quoting *Garcetti*, 547 U.S. at 420). By contrast, where an employee's speech is in the form of public trial testimony, for example, the employee is protected from retaliation. *See Clairmont v. Sound Mental Health*, 632 F.3d

1091, 1104 (9th Cir. 2011) (distinguishing *Desrochers*).

The facts in the present case, so far as Plaintiff has revealed them to the Court—the factual allegations in the AC are sparse—indicate the same fact pattern as in *Desrochers*: a subordinate officer is unsatisfied with the competence of his superior or his superior's poor treatment of him, so he makes an internal complaint. "[Plaintiff] bear[s] the burden of showing that the[] speech addressed an issue of public concern, based on the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 709 (quoting *Connick*, 461 U.S. at 147–48; *Eng*, 552 F.3d at 1070) (citations and internal quotation marks omitted). Plaintiff has not produced any evidence of what his speech consisted or the form in which it was presented, and he therefore has not met his burden.

First, Plaintiff adduces a copy of an Employee Misconduct Adjudication Report (the "Report"), sustaining two of three charges of misconduct against him. (*See* Report, Jan. 8, 2008, ECF No. 34-1, at 5). The Report contains no evidence of the content or form of Plaintiff's speech that allegedly led to the charges or his termination. Second, Plaintiff adduces excerpts of the telephonic deposition of McDaniel, which is brief and concerns only the Report. (*See* McDaniel Dep., Nov. 5, 2010, ECF No. 34-1, at 10). Third, Plaintiff adduces excepts of his disciplinary hearing. (*See* Hr'g Tr., June 16, 2009, ECF No. 34-1, at 20). The excerpts address only the underlying charges against him, not Plaintiff's alleged speech concerning Brooks. (*See generally id.*).

Next, Plaintiff adduces copies of several NDOC administrative regulations and what appears to be part of his personnel file documenting his employment history, including commendations, discipline, and the like, and culminating with a recommendation of termination. Next are excerpts from another hearing on September 11, 2009, at which a Michael Scheel testified as to his negative opinion of Brooks's management qualities and her vendetta against Plaintiff. The testimony includes no evidence of Plaintiff's alleged protected speech concerning

Brooks.  Next are excerpts from the September 11, 2009 hearing, at which an Arthur Neagle

testified as to his negative opinion of Brooks's communication skills and his positive opinion of

Plaintiff's own performance.  The testimony includes no evidence of Plaintiff's alleged protected

speech concerning Brooks.  Next are excerpts from the September 11, 2009 hearing, at which an

Edward Abrahamson testified as to procedures for tower inspections.  The testimony includes no

evidence of Plaintiff's alleged protected speech concerning Brooks.  Next are excerpts from the

June 16, 2009 hearing, at which Brooks herself apparently testified on cross-examination about

whether she instructed Plaintiff to do a logbook inspection or a "tour" on a particular day.

However, the excerpt contains only the hearing judge's opinions of what facts would support

termination and what facts would not.  The excerpt includes no evidence of Plaintiff's alleged

protected speech concerning Brooks and is little evidence at all, because it is simply a dialogue

on the record between the hearing judge and counsel, not the testimony of any witness.

Finally, Plaintiff's own declaration in opposition to summary judgment focuses mainly

on the tower inspection incident, and only briefly and conclusorily alleges that he "spoke out,

alone and in association with others, to Cox, McDaniel and Skolnik regarding Brooks'

incompetence as Associate Warden of Operations . . . ." (Falge Decl. 2:24–25, Jan. 27, 2011,

ECF No. 34-3, at 2).  The language simply reproduces the language of paragraph 5 of the AC.

At most, it is a conclusory attestation of some kind of internal grievance.  Unlike in *Desrochers*,

Plaintiff produces no evidence of (or for that matter even alleges) the form or content of his

alleged speech against Brooks.  Oral argument, like the response to the present motion, focused

mainly on the largely irrelevant issue of whether Plaintiff's conduct as an employee was proper

or whether Brooks was in fact incompetent, issues not before the Court for relitigation.  Neither

side focused on the dispositive issue of whether Plaintiff had produced evidence creating a

genuine issue of material fact as to whether he had engaged in protected speech that led to his

firing.  Plaintiff's opposition is not sufficient to survive summary judgment on a First

Amendment retaliation claim.  Plaintiff has not produced any evidence that could lead to an inference that his alleged speech was on a matter of public concern.  The only relevant evidence adduced is Plaintiff's own declaration, which shows this to have been an internal power struggle of the kind in *Desrochers*.  Defendants are entitled to summary judgment.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 32) is GRANTED.

IT IS SO ORDERED.

Dated this 29th day of March, 2011.

_____
ROBERT C. JONES
United States District Judge